**SUNDAY RIVER SKIWAY CORP.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued March 21, 1990.
Decided April 13, 1990.

Valerie Stanfill, Daniel Kagan (orally), Berman, Simmons & Goldberg, Lewiston, for plaintiff.

Polly Frawley, Mary Jean Crouter (orally), Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

In 1987, subsequent to an audit that covered a period from June 1, 1984, to April 30, 1987, the State Tax Assessor, acting pursuant to 36 M.R.S.A. §§ 1751–2113 (1978 & Supp.1988) (Maine Sales and Use Tax Law) assessed a use tax, plus interest and penalties, in the total amount of $178,-363 against Sunday River Skiway Corporation for the purchase of several kinds of equipment and materials used in conjunction with Sunday River's ski resort activities. Among other things, the assessment covered the purchase of ski-lift and snow-making equipment, and sand, stone, loam, and gravel. A reconsideration of the tax liability assessment resulted in a reduction of the assessment to $165,438. Sunday River appealed the reduced assessment to the Superior Court (Oxford County, *Perkins, J.*). The Superior Court granted judgment in favor of the Tax Assessor, and Sunday River appeals to this Court. We find no error and we affirm.

■ Sunday River first contends that its purchase of ski-lift equipment was not subject to use tax because, at the time purchased, the equipment had already been attached as a fixture to realty and was, therefore, real property as opposed to personal property. *See* 36 M.R.S.A. § 1861 (1978), *repealed and replaced by* P.L.1985 ch. 783, § 7 (effective June 1, 1986) (providing tax for tangible personal property only). We are not persuaded by this argu-

ment. On January 31, 1986, when Sunday River contracted with the manufacturer to purchase the ski-lift equipment, 36 M.R.S.A. § 1752(11) (1986) included in the definition of a taxable "retail sale" "conditional sales, installment lease sales, and *any other transfer* of tangible personal property *when the title is retained as security for the payment of the purchase price* and is intended to be transferred later." (Emphasis added). The sales contract between Sunday River and the ski-lift equipment manufacturer stated that title and ownership of the ski-lift equipment would be retained by the manufacturer until the contract price was paid, for the express purpose of securing Sunday River's payment. *See* 11 M.R.S.A. § 1–201(37) (1964).[1] Therefore under section 1752(11) the sale occurred before the equipment was attached to realty. We conclude that Sunday River purchased personal property, not real property.

 Next, Sunday River contends that the sand, stone, loam, and gravel that it purchased were delivered to it by the sellers of these materials and incorporated as part of Sunday River's realty, thereby becoming fixtures, before title passed from the sellers to Sunday River. We find this argument unpersuasive. The critical issue on which taxability hinges is who engaged in the "use" of the sand, stone, loam, and grave, not when was title transferred. Under 36 M.R.S.A. § 1763 (1978), Sunday River bore the burden of proving that these purchases were not taxable transactions.

The Superior Court implicitly found that Sunday River failed to demonstrate that the purveyors of these materials did anything more than deliver the materials. On the record before us, we find no error in the Superior Court's conclusion that Sunday River is the taxable party, not the purveyors.

■ Finally, contrary to Sunday River's argument, it cannot be said that the snow produced by its new snow-making equipment is tangible personal property "sold" or "leased" to its skiing customers. Therefore the snow-making equipment does not fall within the exemption provided by 36 M.R.S.A. § 1760(31).[2]

The entry is:

Judgment affirmed.

All concurring.

---

1. Although the consequences of finding a contract to be a secured transaction under Article 9 of the Uniform Commercial Code are different from the tax consequences under the Maine tax use laws, we acknowledged in *Hannaford Bros., Co. v. State Tax Assessor*, 487 A.2d 251, 254 (1985) that the analysis used to determine whether an event, a "retail sale," occurs triggering taxation under Maine law exists parallels the analysis used under the U.C.C. to determine if a secured transaction exists. In *Hannaford Bros.*, we also noted that, "U.C.C. analysis looks first to the definition of 'security interest' in (11 M.R.S.A.) § 1–201(37)." 11 M.R.S.A. § 1–201(37) defines a security interest as follows:

"Security interest" means an interest in personal property or fixtures which secures pay-

ment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to buyer … is limited in effect to a reservation of a "security interest."

2. The version of 36 M.R.S.A. § 1760(31) in effect during the audit period created an exemption from sales or use tax for the following kinds of machinery and equipment:

Sales of new machinery and equipment for use by the purchaser directly and primarily in the production of tangible personal property which property is intended to be sold or leased ultimately for final use or consumption.

36 M.R.S.A. § 1760(31) (1978), *amended by* P.L. 1985, ch. 276 (effective Sept. 15, 1985) (deleting "new" from "new machinery and equipment").